Rita CUNNINGHAM

v.

Elliott RICHARDSON, Secretary of Health, Education and Welfare.

Civ. A. No. 72–934.

United States District Court, E. D. Pennsylvania.

July 17, 1973.

Morton A. Cohen, Benjamin B. Levin, Community Legal Services, Philadelphia, Pa., for plaintiff.

Robert E. J. Curran, U. S. Atty., E. D. Pa., by John T. Thorn, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HANNUM, District Judge.

This is an action under Section 205(g) of the Social Security Act, 42 U. S.C. § 405(g), brought to review a final decision of the Secretary of Health, Education and Welfare denying plaintiff's claim for a period of disability and for

disability insurance benefits.[1] In accordance with the requirements of the Act, the defendant has filed a certified copy of the record developed before the Social Security Administration. Both parties have filed a motion for summary judgment, and, in the alternative, plaintiff requests that the case be remanded for further hearings.

■ The central issue raised by the present motions is whether the decision of the Secretary is supported by substantial evidence. "Substantial evidence" has been described as ". . . more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), citing, Consolidated Edison Co. v. N. L. R. B., 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938).

■ Section 405(g), 42 U.S.C., provides in pertinent part that:

"The findings of the Secretary as to any fact, if supported by substantial evidence shall be conclusive . . . ."

The Hearing Examiner made the following specific findings:

(1) The claimant last met the special earnings requirements of the Social Security Act in the quarter ending March 31, 1969. Her condition subsequent to such date is not in issue before the Hearing Examiner.

(2) The medical evidence does not reveal that the claimant is so impaired that she could not return to work for which she is qualified by training and experience such as the work of a packer in the food industry or a bow tier in the stationery field.

(3) The claimant herein is not medically precluded from performing one or more of the light or sedentary job duties described by the vocational expert at the hearing.

(4) The claimant is not under a disability as defined in the Social Security Act, as amended. (Tr. 11)

In the Court's view, the Secretary's findings are supported by "substantial evidence," therefore, the defendant's motion will be granted and the plaintiff's motion will be denied.

■ Under the Social Security Act, the claimant has the burden of demonstrating that she is under a disability as defined in the Act. See, Bittel v. Richardson, 441 F.2d 1193, 1195 (3d Cir. 1971); Robles v. Finch, 409 F.2d 84, 86 (1st Cir. 1969); Franklin v. Secretary of Health, Education and Welfare, 393 F.2d 640, 642 (2d Cir. 1968). "Disability" is explained in Section 423, 42 U.S. C., as follows:

"(d)(1) The term 'disability' means—

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months

. . . .

*   *   *   *   *   *

"(2) For purposes of paragraph (1)(A)—

(A) An individual . . . shall be determined to be under a disability only if his physical or mental· impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy ex-

1. The decision rendered by a hearing examiner on December 22, 1971 (Tr. 7–12), became the final decision of the Secretary in this case when the Appeals Council denied plaintiff's request for review on March 17, 1972 (Tr. 4).

ists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

\* \* \* \* \* \*

"(3) For purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

\* \* \* \* \* \*

"(5) An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."

In the present case the disability must have commenced on or before March 31, 1969, because the claimant must meet certain insured status requirements of the Act.

The plaintiff, a 48 year old woman, filed her application for disability benefits on August 30, 1970 (Tr. 31–34). In it she stated that she became unable to work in 1964, and she described her impairment as a "nervous condition, arthritis and bursitis". During the course of a disability interview on that day (Tr. 45–48), she stated that her impairment began in 1960 when she had a hysterectomy. After that she would easily become nervous and upset. She related that in the early 1960's she developed bursitis which developed into arthritis. She began losing some time at work because of these conditions and she stated that in 1964 she discontinued working on her doctor's advice. Claimant indicated that since she stopped working her arthritis has become more severe and has spread to her arms, legs, and shoulders. She stated that she takes medica-

tion for her nerves and occasionally gets stomach spasms. Claimant further indicated that she was advised to stay as calm as possible and to avoid climbing steps when she has arthritis pains in her legs. In describing her daily activities, claimant stated that she lives with her husband and daughter. She stated that she did the cooking and light housekeeping but her daughter does the scrubbing. Claimant indicated she used public transportation to travel, and that she was able to take care of her personal needs. Claimant described her work experience from 1953–1964 as a packer for a food market. This job required her to lift packages of vegetables weighing up to 5 pounds and place them on a conveyor belt. The physical requirements of this employment included standing and bending. Prior to her job as a packer, plaintiff was employed in a position where she tied bows on boxes of stationery. At this initial interview plaintiff indicated that her formal education went up to the tenth grade, but at the subsequent hearing she corrected this to indicate she had only completed the sixth grade.

The representative of the Social Security Administration who conducted the interview on August 3, 1970 observed that the claimant did not give any indications of discomfort during the interview and that her movements seemed normal.

Plaintiff's physician, Dr. Arnold H. Berger, a general practitioner, submitted a report on August 4, 1970 (Tr. 56–59). He indicated that the claimant underwent a hysterectomy in 1960. His diagnosis included post-operative pain and arthritis of the knees. On June 21, 1971 (Tr. 62), November 16, 1971 (Tr. 74), and January 11, 1972 (Tr. 76), Dr. Berger submitted letters regarding plaintiff's condition. These identical letters state:

"This will certify that the above captioned has been under my care periodically for polyarticular hyperthropic arthritis and extreme anxiety neurosis. These manifest themselves by at-

tacks of abdominal pain, nausea, and loss of appetite. They have been followed by bouts of hypertension and secondary anemia.

She is definitely non-employable."

The medical evidence in the record also includes reports of Dr. Jose H. Auday, (Tr. 61), an orthopedic surgeon, and Dr. Nicholas Karayannis (Tr. 60), a specialist in radiology. Dr. Auday indicated that the plaintiff complained of suffering from pain in different joints, mainly her knees. He was forwarded an x-ray report of plaintiff's right knee by Dr. Karayannis. This x-ray report recited:

"Multiple views of the right knee reveals no evidence of any recent fracture or dislocation. The knee joint and the patella reveals no roentgen abnormalities. No arthritic changes are seen and no soft tissue abnormalities are noted."

Dr. Auday conducted a physical examination of the claimant and summarized his results as follows:

"This is a well nourished, cooperative patient who measures 4′ 11 and weighs 135 pounds. Patient was able to undress without any guarding. Examination did not show signs of deformities or muscle atrophy as seen in rheumatoid arthritis. There was adequate motion of the cervical spine. There was adequate motion of shoulders and upper extremities. There was adequate motion of the chest. There was full range of motion of the sacro-lumbar spine. There were adequate reflexes, no sensory disturbances. There was adequate motion of both knees. There were no signs of effusion. There were adequate cruciates and collateral ligaments. The Rhomberg test was negative. Finger to nose test was negative. Adson test was also negative."

Before the Hearing Examiner on November 24, 1971 (Tr. 17–30), the claimant stated that she takes care of her own personal requirements and uses public transportation when she has to go anywhere. At this time she stated that she did no housework at all. She also stated that she gets severe headaches and has problems with her nerves. Claimant further indicated that she was taking medication for these problems and that she went once a year for a needle for her arthritis. Claimant's daughter testified that she did what her mother couldn't do in the house.

Mr. H. Dale Friedman, a vocational expert (Tr. 68–73), also testified before the Hearing Examiner. He defined light and sedentary work (Tr. 27, 28). He then described various job duties which he felt the claimant could perform if the claimant should be found to have an ability to perform light or sedentary work. These duties included such diverse tasks as packaging, inspecting, and tray setting (Tr. 29). He indicated that significant numbers of these jobs existed in the local area.

Plaintiff contends that the decision of the Secretary is not supported by "substantial evidence" in light of the record filed with the Court because the Hearing Examiner failed to consider the plaintiff's documented evidence and complaints of pain.

■ It is, of course, true that the phrase "demonstrable by medically acceptable clinical and laboratory diagnostic techniques," used to explain the meaning of the term "disability" in the Act, is not limited to objective medical data. See, Bittel v. Richardson, supra.

"Symptoms which are real to the claimant, although unaccompanied by objective medical data, may support a claim for disability benefits, *providing, of course, the claimant satisfies the requisite burden of proof*." (emphasis added) [2]

■ Unlike Sayers v. Gardner, 380 F.2d 940 (6th Cir. 1967) and Drafts v. Celebrezze, 240 F.Supp. 535 (E.D.S.C. 1965), cited by the plaintiff, where the Hearing Examiners refused to consider

2. Bittel v. Richardson, 441 F.2d 1193, 1195 (3d Cir. 1971).

subjective medical evidence, it is evident from the present record (Tr. 8–12) that all evidence was considered in this case, but that the subjective evidence of pain was accorded little weight. In evaluating the evidence of pain it should be noted that the plaintiff's own physician, upon whom she places chief reliance, makes no mention of intense pain associated with his diagnosis of arthritis. The subjective testimony of the claimant must, of course, be evaluated with due consideration for motivation, medical evidence of an impairment and credibility. *See,* Robles v. Finch, 409 F.2d 84, 87 (1st Cir. 1969); Rolenaitis v. Richardson, 336 F.Supp. 1235 (E.D.Pa.1972). While the plaintiff undoubtedly suffers some sensation of pain from the conditions she has enumerated, there is nothing in the record to show that the pain she suffers is sufficiently severe to be disabling. See generally, Jenkins v. Gardner, 430 F.2d 243 (6th Cir. 1970); Franklin v. Secretary of Health, Education and Welfare, 393 F.2d 640 (2d Cir. 1968); Mark v. Celebrezze, 348 F.2d 289 (9th Cir. 1965); Adams v. Fleming, 276 F.2d 901 (2d Cir. 1960); Coleman v. Gardner, 264 F.Supp. 714 (S.D.W.Va. 1967).

■ Plaintiff also contends that the Hearing Examiner's medical findings were not supported by substantial evidence because they were based solely upon hearsay evidence. Although no doctors testified before the Hearing Examiner, their reports were properly considered by the Examiner in this case. *See,* Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); Ratliff v. Richardson, 445 F.2d 440 (5th Cir. 1971).

■ Plaintiff's final contention is that she was denied a fair hearing because she was not represented by counsel. In the Notice of Hearing dated November 8, 1971 (Tr. 13, 14), the plaintiff was fully advised of her right to be represented at the hearing by an attorney. She was again reminded at the hearing of her right to counsel, but she indicated that she would represent her-

self (Tr. 19). While the plaintiff contends that lack of counsel resulted in the denial of a fair hearing, the plaintiff has not made a showing of clear prejudice or unfairness at the agency proceedings which would warrant remanding the case for further consideration. *See,* Davis v. Richardson, 460 F.2d 772 (3d Cir. 1972); Mills v. Richardson, 339 F.Supp. 402 (W.D.Pa.1972).